IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHY BLACKMAN | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 10-6946 |
| LINCOLN NATIONAL CORPORATION, | : | |
| ET AL. | : | |

**SURRICK, J.**                                                                                                    **DECEMBER  10 , 2012**

## <u>MEMORANDUM</u>

Presently before the Court are Defendant Lincoln National Corporation's Motion for Partial Dismissal of Complaint (ECF No. 4) and Plaintiff's Opposition to Partial Dismissal, or in the alternative, Plaintiff's request for leave to amend the Complaint (ECF No. 6).[1] For the following reasons, Defendant's Motion for Partial Dismissal will be granted and Plaintiff's request to amend will be denied.

**I. BACKGROUND**[2]

Plaintiff Kathy Blackman files this employment discrimination case against her former

---

[1] Plaintiff does not file a separate motion for leave to amend the Complaint. Rather, in Plaintiff's opposition to partial dismissal of the Complaint, Plaintiff requests that the Court deny Defendant's motion for partial dismissal, or in the alternative, grant Plaintiff leave to amend the Complaint pursuant to Federal Rule of Civil Procedure 15. We will treat Plaintiff's request as a motion for leave to amend, and will deny the request to amend for the reasons stated herein.

[2] For purposes of this Motion, we accept as true the facts alleged in Plaintiff's Complaint. Pursuant to Federal Rule of Civil Procedure 12(b)(6), all factual allegations are viewed in the light most favorable to Plaintiff, the nonmoving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("When assessing whether the complaint satisfies [the 12(b)(6)] standard, courts must treat a complaint's allegations as true.").

employers, Defendants Lincoln National Corporation and Lincoln Financial Group, LLC.[3] Defendant Lincoln National is an Indiana Corporation with its principal place of business in Radnor, Pennsylvania. (Compl. ¶ 4, ECF No. 1.) Defendant Lincoln Financial is a Delaware corporation with its principal place of business in Radnor, Pennsylvania. (*Id.* at ¶ 5.) Plaintiff is an Illinois resident, and previously worked for Defendants at Defendants' Illinois office from 2004 to 2009. (*Id*. at ¶¶ 1, 22, 35 & Ex. 1.)

Plaintiff alleges that she was subjected to discrimination on the basis of her sex and age by Defendants and that Defendants retaliated against her by terminating her employment in 2009. Plaintiff was hired by Defendants in June 2004 and was promoted to Divisional Sales Manager in June 2006. (*Id.* at ¶ 22.) After being demoted, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 20, 2008, alleging discrimination based on her sex. (*Id.* at ¶¶ 33-34 & Ex. 1.) The charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").[4] (*Id.* at ¶ 18.) Plaintiff was notified in April 2009 that she would be terminated effective June 29, 2009. (*Id.* at ¶ 35.) On July 6, 2009, Plaintiff filed a second charge of discrimination with the EEOC alleging discrimination based upon her age and sex, and retaliation. (*Id.* at ¶ 19 & Ex. 2.) The second charge was also cross-filed with the PHRC. (*Id.*) On September 3, 2010, the EEOC issued a Dismissal and Notice of Rights to Plaintiff regarding both of her charges of discrimination. (*Id*. at ¶ 20.) On September 28, 2010, the PHRC notified Plaintiff that her complaint had been closed "administratively." (Pl.'s Resp. Ex. C.)

---

[3] Plaintiff filed her lawsuit against both Lincoln National Corporation and Lincoln Financial Group, LLC, alleging that both are her employers. The instant Motion is filed by Lincoln National Corporation only.

[4] The PHRC is the administrative commission charged with administering and enforcing the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. §§ 951, *et seq.* ("PHRA"). *See* 43 Pa. Stat. Ann. § 956.

Plaintiff commenced this action on November 29, 2010, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (Count I), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA") (Count II), and the PHRA, 43 Pa. Stat. Ann. §§ 951, *et seq.* ("PHRA") (Count III). Defendant Lincoln National moves to dismiss Count III of the Complaint, arguing that the PHRA does not apply to individuals that neither reside nor work in Pennsylvania.

## II. LEGAL STANDARD

A complaint, or any part of a complaint, may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

Federal Rule of Civil Procedure 15(a) requires that leave to amend the pleadings be granted freely "when justice so requires." *See also Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). A district court is justified in denying leave to amend a pleading if the amendment would be futile. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "Futility" means that the "complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.*

## III. DISCUSSION

Defendant argues that Count III of the Complaint should be dismissed on the grounds that Plaintiff cannot state a claim for a violation of the PHRA. Specifically, Defendant argues that the PHRA does not apply to individuals like Plaintiff who neither live nor work in Pennsylvania. Defendant contends that the PHRA does not have "extraterritorial" application. Defendant relies on the case *Taylor v. Rodale, Inc.*, which held that the PHRA does not protect nonresidents not working in Pennsylvania from discriminatory conduct by Pennsylvania actors. No. 04-799, 2004 U.S. Dist. LEXIS 10078, at *12 (E.D. Pa. May 27, 2004). Plaintiff counters that 1) the language of the PHRA does not explicitly preclude protection for nonresidents of Pennsylvania, 2) the *Taylor* decision is distinguishable, and 3) the PHRA applies in this case because Pennsylvania is the location of Defendant's principal place of business and corporate headquarters. Finally, Plaintiff requests leave to amend the Complaint in order to set forth more specifically her claim under the PHRA.

### A. Dismissal of the PHRA Claim (Count III)

In determining whether the PHRA protects individuals like Plaintiff who neither reside nor work in Pennsylvania, we first look to the statutory language. The relevant section of the PHRA states:

It shall be an unlawful discriminatory practice . . .

> (a) For any employer because of the race, color, religious creed, ancestry, age, sex, national original or non-job related handicap . . . of any individual . . . to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual . . . or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual . . . is the best able and most competent to perform the services required.

4

43 Pa. Stat. Ann. § 955(a). The PHRA further states that "[a]ny person claiming to be aggrieved by an alleged unlawful discriminatory practice may make, sign and file with the [PHRC] a verified complaint . . . ." *Id.* § 959(a). "Employer" is defined to include "any person employing four or more persons within the Commonwealth." *Id.* § 954(b). "Individual" is not defined in the PHRA; however, "person" is defined to include "one or more individuals." *Id.* § 954(a). Plaintiff relies on the definition of "employe[e]" in arguing that its broad scope and lack of geographical limitations includes Plaintiff. However, nowhere in Section 955(a) of the PHRA is the word "employe[e]" used.[5] In any event, Plaintiff's reliance on "employe[e]" is of no practical importance because section 955(a) and the definitions associated therewith also do not contain any geographical restrictions on who is protected by the statute.

Because Section 955(a) and the definitions of words used in that section do not indicate whether the PHRA applies to nonresidents not working in Pennsylvania, we look to other sections of the statute to determine the legislative intent. *Dada v. Mukasey*, 554 U.S. 1, 16 (2008) ("In reading a statute, we must not look merely to a particular clause, but consider in connection with it the whole statute.") (internal quotation marks omitted); *In the Interest of Jones*, 429 A.2d 671, 677 (Pa. Super. Ct. 1981) ("The court must determine legislative intent from the totality of a statute and render an interpretation which gives effect to all of its provisions."); 1 Pa. Cons. Stat. § 1922 (stating that "[i]n ascertaining the intention of the General

---

[5] "Employe[e]" is used in other provisions of the PHRA. For its definition, the PHRA only states that the term does not include "(1) any individual employed in agriculture or in the domestic service of any person, (2) any individuals who, as part of their employment, reside in the personal service of the employer, [or] (3) any individual employed by said individual's parents, spouse or child." 43 Pa. Stat. Ann. § 954(c).

5

Assembly in the enactment of a statute," a presumption exists that the entire statute be given effect).

The "findings and declaration of policy" section of the PHRA reveals that the purpose and intent of the PHRA was to protect "the inhabitants of" and "the people of the Commonwealth." 43 Pa. Stat. Ann. § 952. The section provides:

> This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, prosperity, health and peace *of the people of the Commonwealth of Pennsylvania*.

*Id.* at § 952(c) (emphasis added). That section further provides:

> The practice or policy of discrimination against individuals or groups . . . is a matter of concern of the Commonwealth. Such discrimination foments domestic strife and unrest, threatens the rights and privileges *of the inhabitants of the Commonwealth*, and undermines the foundations of a free democratic state. The denial of equal employment . . . because of such discrimination . . . deprives large segments of the population of the Commonwealth of earnings necessary to maintain decent standards of living . . . thereby threatening the peace, health, safety and general welfare *of the Commonwealth and its inhabitants*.

*Id.* at § 952(a) (emphasis added).

"Inhabitant" is not defined in the PHRA; however, the word "inhabit" is defined elsewhere to mean "to dwell in" or "to occupy permanently or habitually as a residence." Black's Law Dictionary 853 (9th ed. 2009). The term "inhabitants" thus implies that the PHRA protects those who live or reside in Pennsylvania. It is not clear whether the General Assembly intended to protect a broader class of individuals, such as those who work but do not reside in Pennsylvania, by including "the people of the Commonwealth" in the policy declaration.[6] We

---

[6] We note that limiting the scope of the PHRA to protect only residents of Pennsylvania and not nonresidents who work in Pennsylvania would create a problem with the protection afforded by New Jersey's counterpart to the PHRA, the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. §§ 10:5-1, *et seq*. New Jersey courts have limited application of the

6

need not decide this issue, however, because Plaintiff does not allege that she works in Pennsylvania. When we construe the whole statute, including the "findings and declaration of policy" section, we are satisfied that the PHRA does not protect individuals like Plaintiff who neither reside nor work in Pennsylvania. *See Taylor,* 2004 U.S. Dist. LEXIS 10078, at *11 (stating that the declaration and policy section of the PHRA "suggests that it contemplated only the protection of residents and workers in Pennsylvania").

Our conclusion is supported by the well-established presumption against extraterritorial application of statutes. This "legal presumption [is] that Congress ordinarily intends its statutes to have domestic, not extraterritorial, application." *Small v. United States*, 544 U.S. 385, 388 (2005); *EEOC v. Arabian Am. Oil Co. ("ARAMCO")*, 499 U.S. 244, 248 (1991) ("[I]t is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.") (internal quotation marks omitted); *Asplundh Tree Expert Co. v. NLRB*, 365 F.3d 168, 173 (3d Cir. 2004) ("In applying this rule of construction, we look to see whether language in the relevant Act gives any indication of a congressional purpose to extend its coverage beyond places over which the United States has sovereignty or has some measure of legislative control.") (quoting *ARAMCO*,

---

NJLAD to only those who work in New Jersey. *Satz v. Taipina*, No. 01-5921, 2003 U.S. Dist. LEXIS 27237, at *45-46 (D. N.J. Apr. 15, 2003) ("New Jersey courts have consistently applied the law of the state of employment to workplace claims, and have therefore only applied the NJLAD if the plaintiff worked in New Jersey."). New Jersey residents are not protected by the NJLAD if they do not work in New Jersey. *Buccilli v. Timby, Brown & Timby*, 660 A.2d 1261, 1263 (N.J. Super. Ct. App. Div. 1995) (holding that a New Jersey resident who worked exclusively in Pennsylvania could not bring an employment discrimination claim under New Jersey law). Thus, if Pennsylvania courts were to read the PHRA narrowly so that it only applied to Pennsylvania residents, a New Jersey resident that works in Pennsylvania would be foreclosed from asserting an employment discrimination claim under either of the state statutes. This result would be unfair to the many New Jersey residents that cross state lines to work in Pennsylvania.

499 U.S. at 248)).

      Courts, including one in this District, have applied this presumption to interpret state anti-discrimination statutes in determining whether such statutes apply to nonresidents of that state. *See, e.g.*, *EEOC v. CRST Van Expedited,* Inc., No. 07-95, 2009 U.S. Dist. LEXIS 46204, at *57 (N.D. Iowa June 2, 2009) (construing the Iowa Civil Rights Act "against the backdrop of the non-extraterritoriality principle of statutory construction"); *Judkins v. St. Joseph's Coll. of Me.*, 483 F. Supp. 2d 60, 65 (D. Me. 2007) (applying the "well-established presumption against extraterritorial application of a state's statutes" to interpretation of the Maine Human Rights Act); *Taylor*, 2004 U.S. Dist. LEXIS 10078, at *6-7 (considering presumption against extraterritorial application of federal legislation in interpreting the PHRA); *Arnold v. Cargill, Inc.*, No. 01-2086, 2002 U.S. Dist. LEXIS 13045, at *7 (D. Minn. July 15, 2002) (noting that the "presumption against the extra-territorial application of a state's statutes . . . serves to avoid running afoul of the Commerce Clause of the United States Constitution") (internal quotation marks omitted); *Union Underwear Co., Inc. v. Barnhart*, 50 S.W. 3d 188, 190 (Ky. 2001) ("[U]nless a contrary intent appears within the language of [the Kentucky Civil Rights Act], we presume that the statute is meant to apply only within the territorial boundaries of the Commonwealth.").

      To overcome this presumption, the state statute must contain clear and explicit language stating that it has extraterritorial application. *Judkins*, 483 F. Supp. 2d at 65. Since the PHRA is silent as to whether it applies to individuals that neither work nor reside in Pennsylvania, the presumption is that the PHRA does not have extraterritorial reach. *Taylor*, 2004 U.S. Dist. LEXIS 10078, at *6-7 (noting that the presumption against extraterritorial application of federal

8

legislation "would seem to preclude us from extending the reach of the PHRA to conduct that occurs in other states in the absence of clear legislative intent to the contrary").[7]

The holding of the *Taylor* case and its factual similarity support our conclusion that the PHRA does not apply to Plaintiff.[8] In *Taylor*, the plaintiff brought suit under the ADEA and the PHRA, alleging that he was terminated on account of his age. 2004 U.S. Dist. LEXIS 10078, at *2-3. The plaintiff was a Georgia resident that worked exclusively in Georgia. *Id.* at *2. The defendant moved to dismiss the plaintiff's PHRA claim, arguing that the PHRA does not apply to nonresidents not working in Pennsylvania. *Id.* at *4. The plaintiff argued that the PHRA applied because the supervisors that made the decision to terminate him worked out of the defendant's Pennsylvania office. *Id.* at *4. The court dismissed the PHRA count, holding that "the relevant location [] with regard to the PHRA is the location of Plaintiff's workplace, not [the decision-maker's] location." *Id.* at *9.

The *Taylor* court based its decision on the applicability of the ADEA, reasoning that the PHRA is generally interpreted in accordance with its federal counterparts. *Id.* at *5-6, 8 (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3rd Cir. 1996)). "Under the ADEA, 'the site of the workplace determines the applicability.'" *Id.* at *7 (quoting *Denty v. Smithkline Beecham Corp.*,

---

[7] Defendant further supports this point by directing our attention to a section of the Pennsylvania Workers' Compensation Act, 77 Pa. Stat. Ann. § 411.2, which explicitly provides for extraterritorial application under certain enumerated circumstances. Defendant argues that because "the Pennsylvania General Assembly expressly provided for extraterritorial application of state law in other statutes [like the Workers' Compensation Act], the omission of a similar provision from the PHRA must have been intentional." (Def.'s Resp. 4 n.2.) We agree.

[8] Aside from *Taylor*, we are aware of no other Pennsylvania decision, including decisions of Pennsylvania state courts, that has addressed the issue of whether the PHRA protects nonresidents that do not work in Pennsylvania.

907 F. Supp. 879, 884 (E.D. Pa. 1995), *aff'd*, 109 F.3d 147 (3rd Cir. 1997)). The court concluded that "[w]e see no reason why the PHRA should be interpreted differently than the ADEA with respect to determining the location of the discriminatory act." *Id.* at *8-9. The court also found support in the policy language of the PHRA, which "contemplated only the protection of residents and workers in Pennsylvania." *Id.* at *11. We agree with the reasoning of the *Taylor* Court and conclude that the PHRA does not protect individuals who neither reside nor work in Pennsylvania.

Initially, Plaintiff argues that *Taylor* can be distinguished on the basis that the court in *Taylor* assigned "significant weight" to the PHRC's determination that it lacked jurisdiction over the plaintiff's complaint. *Taylor*, 2004 U.S. Dist. LEXIS 10078, at *4. Here, the PHRA did not make the same determination, but instead stated simply that Plaintiff's "case was closed administratively." (PHRC Letter, Sept. 29, 2010, Pl.'s Resp. Ex. C.) Plaintiff sidesteps the more critical language in *Taylor*. After noting that it "accord[s] great deference" to the determination by the PHRC, the *Taylor* court went on to say that "even if we declined to rely on the PHRC's determination, we would still find that Plaintiff has failed to state a claim upon which relief can be granted." *Taylor*, 2004 U.S. Dist. LEXIS 10078, at *4-5.

Even if the *Taylor* court had found the PHRC's decision that it lacked jurisdiction determinative, the fact that the PHRC did not make the same determination with respect to Plaintiff is irrelevant. The PHRC's letter stating that Plaintiff's case was closed for administrative instead of jurisdictional reasons is not deemed an acceptance of jurisdiction over Plaintiff. Prior to being notified that her case was "closed administratively," Plaintiff received two letters from the PHRC. These letters, dated May 30, and June 16, 2010, each advised

10

Plaintiff that the PHRC had not began to investigate Plaintiff's complaint because the EEOC had instead assumed the investigation. (*See* Letter, Apr. 30, 2010, Pl.'s Resp. Ex. B (stating that "[i]n accordance with the Work Sharing Agreement with the EEOC and the PHRC, [the] PHRC waived the opportunity to investigate the complaint."); Letter, June 16, 2010, Pl.'s Resp Ex. B (stating that "[t]he PHRC has been holding your complaint in abeyance pending the completion of EEOC's processing of your case").) Based on PHRC's letters, the PHRC did not take any action to investigate the issue of jurisdiction.

Next, Plaintiff argues that the PHRA applies because Defendant's corporate headquarters and principal place of business are located in Pennsylvania. This argument was rejected by the *Taylor* court and by other courts that have addressed the issue. In *Taylor*, the defendant's principal place of business was located in Pennsylvania. The court nonetheless dismissed the plaintiff's PHRA claim, and held that "[t]he relevant location with regard to the PHRA is the location of Plaintiff's workplace." *Taylor*, 2004 U.S. Dist. LEXIS 10078, at *9. Other courts have similarly found that the location of the corporate headquarters or principal place of business is irrelevant in determining whether state anti-discrimination statutes apply to nonresident plaintiffs. *See, e.g.*, *CRST Van Expedited*, 2009 U.S. Dist. LEXIS 46204, at *53, 61 (dismissing claim under Iowa Civil Rights Act where plaintiffs neither worked nor lived in Iowa and defendant employer's headquarters were in Iowa); *Satz*, 2003 U.S. Dist. LEXIS 27237, at *49 (noting that New Jersey location of defendant's headquarters does not trigger application of the NJLAD when plaintiff did not work in New Jersey); *Arnold*, 2002 U.S. Dist. LEXIS 13045, at *11 ("The fact that [defendant's] headquarters are located in . . . Minnesota is insufficient to justify extraterritorial application [of Minnesota's Human Rights Act]."); *Union Underwear*, 50

S.W. 3d at 190-93 (rejecting plaintiff's argument that he had a claim under the Kentucky Civil Rights Act because defendant's headquarters were located in Kentucky); *Iwankow v. Mobil Corp.*, 150 A.2d 272, 273 (N.Y. App. Div. 1989) (rejecting New York location of corporate headquarters as basis for jurisdiction of New York Human Rights Law claim).

Finally, Plaintiff's argument that she may assert a claim under the PHRA simply because "Defendant meets the definition of 'employer' under the PHRA and Plaintiff meets the definition of 'employee,'" ignores the other sections of the statute, including the "findings and declaration of policy" section. *See supra*. Moreover, Plaintiff's argument is contrary to the presumption against extraterritory application of state statutes. *See CRST Van Expedited*, 2009 U.S. Dist. LEXIS 46204, at *57; *Judkins*, 483 F. Supp. 2d at 65; *Taylor*, 2004 U.S. Dist. LEXIS 10078, at *6-7; *Arnold*, 2002 U.S. Dist. LEXIS 13045, at *7; *Union Underwear*, 50 S.W. 3d at 190. If we were to accept Plaintiff's interpretation, any individual, whether or not they have any connection to Pennsylvania could raise a discrimination claim under the PHRA. The General Assembly could not have intended that the PHRA should protect such a broad group of individuals.

Our determination that the PHRA does not protect individuals that neither reside nor work in Pennsylvania is consistent with an overwhelming majority of state and federal courts that have addressed the jurisdictional reach of their state anti-discrimination laws. *See, e.g.*, *Albert v. DRS Tech., Inc.*, No. 10-3886, 2011 U.S. Dist. LEXIS 55320, at *5 (D. N.J. May 23, 2011) (dismissing NJLAD claim of Florida resident working at Florida office of New Jersey Company); *Hoffman v. Parade Pub.*, 933 N.E. 2d 744, 748 (N.Y. Ct. App. 2010) (holding that New York State Human Rights Law does not protect plaintiff who neither lived nor worked in New York); *Arnold*, 2002 U.S. Dist. LEXIS 13045, at *11 ("[T]he court shall dismiss the MHRA claims of those Plaintiffs who have neither lived nor worked in Minnesota, finding that the MHRA does

not provide for extraterritorial application."); *CRST Van Expedited*, 2009 U.S. Dist. LEXIS 46204, at *59 (dismissing sexual harassment claims "[b]ecause nothing in the purpose, subject matter or history of the ICRA clearly expresses or indicates that the Iowa General Assembly intended the ICRA to operate beyond the borders of the State of Iowa."); *Esposito v. VIP Auto*, No. 07-114, 2008 Me. Super. LEXIS 143, at *5 (Me. Super. Ct. May 6, 2008) (plaintiff who neither worked nor resided in Maine could not assert a claim under the MHRA); *Union Underwear*, 50 S.W. 3d at 193 (dismissing claim under the Kentucky Civil Rights Act where plaintiff neither worked nor lived in Kentucky).

For all of the foregoing reasons, Plaintiff's claim must be dismissed. Plaintiff lives in Illinois and works for Defendant in Illinois. Plaintiff does not allege that she works in Pennsylvania.[9] Plaintiff has failed to state a claim under the PHRA upon which relief can be granted.

**B.     Amending the Complaint Would be Futile**

Plaintiff also moves for leave to amend the Complaint to further substantiate a claim under the PHRA. Specifically, Plaintiff seeks to add the following allegations:

- From in or about 2006 through the present, Plaintiff worked in Pennsylvania at least once per quarter;
- From in or about 2006 through the present, Plaintiff interacted daily with employees in the Pennsylvania office;
- The decision-maker regarding Defendant's failure to promote Plaintiff worked out of Pennsylvania.

---

[9] Plaintiff seeks to amend the Complaint in order to allege that she worked in Pennsylvania at least once per quarter. (Pl.'s Resp. 8.) For the purpose of this Motion to Dismiss, we are confined to the facts alleged in the Complaint and may not consider additional facts proposed in Plaintiff's request to amend. In any event, Plaintiff's request to amend the Complaint will be denied. *See infra* Section III.B.

(Pl.'s Resp. 8 & Ex. D.) Courts will deny requests to amend pleadings if the amendment would be futile. *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005). An amendment is futile if the pleading, as amended, would fail to state a claim upon which relief could be granted. *Shane*, 213 F.3d at 115.

We are satisfied that the additional allegations that Plaintiff proposes with regard to her contacts with Pennsylvania would not save her PHRA claim from dismissal. The argument that the decision to demote Plaintiff was made at Defendant's headquarters in Pennsylvania is of no consequence. The *Taylor* court rejected this very argument. 2004 U.S. Dist. LEXIS 10078, at *9-10 (stating that the relevant location for purposes of the PHRA is the location of plaintiff's workplace and not the location where the decision was made to terminate plaintiff). Moreover, other courts that have looked at this issue have declined to apply the state anti-discrimination law simply because the discriminatory act or decision occurred in that state. *See, e.g.*, *Doner-Hendrick v. New York Inst. of Tech.*, No. 11-121, 2011 U.S. Dist. LEXIS 72714, at *29 (S.D.N.Y. July 6, 2011) (plaintiff's argument that decision to terminate him was made in New York was not sufficient to trigger application of the New York State Human Rights Law where plaintiff neither worked nor lived in New York); *Esposito*, 2008 Me. Super. LEXIS 143, at *5 ("The attempts to argue that discriminatory decisions were made in Maine failed to confer jurisdiction since the plaintiff's employment was outside of Maine."); *Satz*, 2003 U.S. Dist. LEXIS 27237, at *49 (fact that alleged discriminatory decision occurred in New Jersey was insufficient to trigger NJLAD).

Plaintiff's attendance at quarterly meetings at Defendant's Pennsylvania office and daily interactions with employees located in Pennsylvania are also not sufficient to justify extending the reach of the PHRA to a nonresident not working in Pennsylvania. Although this issue did not

come up in the *Taylor* case, we are aware of no other Pennsylvania case that has discussed such facts in the context of a PHRA claim. However, cases in other jurisdictions have held that these types of contacts with the state are not sufficient to trigger application of that state's anti-discrimination laws. For example, in New Jersey, courts have determined that "[m]ere occasional contact with New Jersey as part of [a plaintiff's] employment [i]s insufficient to turn those visits into plaintiffs being 'based' in New Jersey for employment purposes." *Schneider v. Sumitomo Corp. of Am.*, No. 09-5094, 2010 U.S. Dist. LEXIS 59101, at *6 (D. N.J. June 14, 2010) (internal quotation marks omitted). In *Peiken v. Kimmel & Silverman, P.C.*, the plaintiff was a Pennsylvania resident who worked in Pennsylvania but frequently traveled to New Jersey to visit clients. 576 F. Supp. 2d 654, 658 (D. N.J. 2008). Plaintiff argued that her contacts to New Jersey were sufficient to assert a claim under the NJLAD. *Id.* The court rejected this argument and dismissed the plaintiff's claim under the NJLAD. *Id.* The court held that because the allegedly discriminatory conduct occurred in Pennsylvania, where plaintiff lived and worked, Pennsylvania was the "state of employment" for purposes of her discrimination claim. *Id.*

Other courts have similarly found that phone calls and attendance at meetings are not sufficient contacts to a state to justify application of that state's anti-discrimination statute. *See, e.g., Hoffman*, 933 N.E. 2d at 748 (plaintiff's attendance at quarterly meetings in New York was a "tangential connection at best" and not sufficient to maintain a claim under the New York City Human Rights Law); *Esposito*, 2008 Me. Super. LEXIS 143, at *5 (holding that plaintiff who did not reside or work in Maine but had contact with company officials in Maine could not assert a claim under the Maine Human Rights Act).

Even if we permitted Plaintiff to amend her Complaint to include these additional allegations, Plaintiff would nevertheless fail to state a PHRA claim upon which relief could be granted. Accordingly, Plaintiff's request to amend the Complaint is denied.

IV. **CONCLUSION**

For the foregoing reasons, Defendant Lincoln National Corporation's Motion for Partial Dismissal of Complaint will be granted and Plaintiff's request to amend the Complaint will be denied.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**